## In re MEADE.
## No. 67915.

District Court, D. Massachusetts.
March 29, 1945.

Isadore Paretsky, of Boston, Mass., for General Ice Cream Corporation.

Samuel Goldman, of Boston, Mass., trustee.

Raymond Rambach and Thomas F. Dolan, Jr., both of Boston, Mass., for Gilman Brothers, Inc.

Harry Olins, of Boston, Mass., for McKesson & Robbins, Inc.

Simon Cohen, of Boston, Mass., for Rachel Ehrenfried.

WYZANSKI, District Judge.

■ This case arises on petitions for review of an order of Referee Black discharging three attachments against funds of the bankrupt, Raymond J. Meade. Jurisdiction is conferred on this court by 11 U.S.C.A. §§ 66, 67, sub. c, 107, sub. a(4).

September 1941 Meade mortgaged chattels to General Ice Cream Corporation to secure a debt. May 22, 1942, General Ice Cream Corporation took possession under its mortgage; and June 2, 1942, it foreclosed. After payment of all sums due it, General Ice Cream Corporation had a surplus of $341.20. This surplus was attached by McKesson & Robbins May 25, 1942, by Rachel Ehrenfried May 26, and by Gilman Brothers June 2. At the time of these attachments Meade was insolvent and the attaching creditors knew it.

Meade entered the military service of the United States July 3, 1942, and remained there until November 5, 1942, when he was honorably discharged. December 18, 1942, he filed a voluntary petition in bankruptcy. A trustee in bankruptcy was appointed. He petitioned the referee to dissolve the three attachments.

The question is whether the period of Meade's military service shall be included in computing the period of "four months before the filing of a petition in bankruptcy" which attachments must have stood in order not to be null and void under the provisions of § 67, sub. a, of the Bankruptcy Act, 11 U.S.C.A. § 107, sub. a.

The referee excluded the period of Meade's military service and dissolved the attachments. The three attaching creditors now seek a review of the referee's order.

Section 205 of the Act of October 17, 1940, 54 Stat. 1181, provided: "The period of military service shall not be included in computing any period now or hereafter to be limited by any law for the bringing of any action by or against any person in military service or by or against his heirs, executors, administrators, or assigns, whether such cause of action shall have accrued prior to or during the period of such service."

These provisions were retained and amplified by the amendatory Act of October 6, 1942, 56 Stat. 770, 50 U.S.C.A.Appendix, § 525, which provides: "The period of military service shall not be included in computing any period now or hereafter to be limited by any law, (regulation, or order) for the bringing of any action (or proceeding in any court, board, bureau, commission, department, or other agency of government) by or against any person in military service or by or against his heirs, executors, administrators, or assigns, whether such cause of action (or the right or privilege to institute such action or proceeding) shall have accrued prior to or during the period of such service, (nor shall any part of such period which occurs after the date of enactment of the Soldiers' and Sailors' Civil Relief Act Amendments of 1942 be included in computing any period now or hereafter provided by any law for the redemption of real property sold or forfeited to enforce any obligation, tax, or assessment.)" [material in parentheses indicates amplifications of statute]

■ The first issue is whether the amendment of October 6, 1942, applies to this case. I am of opinion that it does not apply. All the attachments here involved were made on or before June 2, 1942. Unless prolonged by the original Soldiers' and Sailors' Civil Relief Act of October 17, 1940, the four months' period referred to in § 67, sub. a, of the Bankruptcy Act would have expired by October 2, 1942. In other words, the normal period for potential nullification of the liens would have fully elapsed prior to the passage of the amendment of October 6, 1942. Nothing in that amendatory statute indicates that it was designed to reopen an already closed period. Indeed there is a precisely opposite indication in the last clause of the amendment. Moreover, the common rule is that statutes are ordinarily to be construed as prospective in operation. Ebert v. Poston, 266 U.S. 548, 554, 555, 45 S.Ct. 188, 69 L.Ed. 435. Therefore, in the case at bar if the normal period of four months has been extended the extension must have been by the Act of October 17, 1940.

■■ The next issue is whether literally § 205 of the Act of October 17, 1940, covers this case. It is clear that Meade was a "person in military service" and that his trustee in bankruptcy is, by law, his as-

sign. Bankruptcy Act § 70, 11 U.S.C.A. § 110. But, strictly speaking, the rule of § 67, sub. a, of the Bankruptcy Act, that under certain circumstances "every lien against the property of a person obtained by attachment * * * within four months before the filing of a petition in bankruptcy * * * shall be deemed null and void" does not constitute a "period * * * limited by * * * law for the bringing of any action." The rule of § 67, sub. a, is not a statute of limitation. Compare Bell v. Buffinton, 244 Mass. 294, 295, 137 N.E. 287. Rather it is a substantive clog on the attaching creditor's title. It gives the attaching creditor a defeasible right which becomes absolute if the debtor is not involved in bankruptcy within four months. It gives the trustee in bankruptcy power to nullify attachments within four months of bankruptcy. That power is what Mr. Justice Brandeis has called "a primary right as distinguished from a remedy." Ebert v. Poston, 266 U.S. 548, 553, 45 S.Ct. 188, 190, 69 L.Ed. 435. Hence literally § 205 of the Act of October 17, 1940, does not cover this case.

There remains the issue whether the broad purpose of the act declared in § 100, 54 Stat. 1179, 50 U.S.C.A. § 510 demands that § 205 be liberally construed beyond its letter to include the situation presented in this case. In approaching this issue as presented in this case it is essential to have in mind the relationship not only of § 67, sub. a, of the Bankruptcy Act, but of the entire Bankruptcy Act to the Soldiers' and Sailors' Civil Relief Act. As stated in § 100 of the Relief Act, 50 U.S.C.A. § 510, the purpose of the statute is "to suspend enforcement of civil liabilities, in certain cases, of persons in the military service of the United States in order to enable such persons to devote their entire energy to the defense needs of the Nation." Consistent with that purpose, § 205 of the Relief Act extends the period of time in which actions can be brought against as well as by persons in the military service. Compare Blazejowski v. Stadnicki, Mass., 58 N.E.2d 164. As applied to bankruptcy, this means that, although § 3, sub. b, of the Bankruptcy Act, 11 U.S.C.A. § 21, sub. b, enunciates that "a petition may be filed against a person within four months after the commission of an act of bankruptcy", the four months' period is not adhered to if the person has entered military service within four months after an act of bankruptcy. Thus, for ex-

ample, if an attaching creditor obtains a lien upon an insolvent debtor's property and within four months thereafter the debtor enters the military service, other creditors have an extension of their right to file a petition for involuntary bankruptcy. It is obviously part of the scheme of the Bankruptcy Act that the right of the other creditors to invoke the lien as a ground for a petition for involuntary bankruptcy, a right given by § 3, sub. a(3) and § 3, sub. b, of the Bankruptcy Act, shall be correlated with the right of the trustee to have the lien declared void, a right given by § 67, sub. a, of the Bankruptcy Act. If, therefore, the Relief Act extends the period of time in which creditors may rely on the lien as a basis for a petition in bankruptcy, the Relief Act should be interpreted to extend the period of time in which the lien is subject to avoidance by the trustee. Any other construction would often promote an absurdity. It would frequently mean that although a creditor made a proper and timely assertion that the securing of a lien was a ground for bankruptcy, the bankruptcy court would be nonetheless powerless to set the lien aside. In order to avoid such paradoxes and to harmonize the statutes it is appropriate to interpret § 205 of the Relief Act broadly so as to treat a lien as defeasible for a period of four months after the lien was obtained plus the period of any military service of the bankrupt which began within four months after the lien was obtained.

This result not only harmonizes two congressional statutes, it also carries out the general policy of the Relief Act. Often a soldier bankrupt may have a legitimate interest in having liens against his property set aside. For example, he may, as in the instant case, have non-dischargeable tax debts to local authorities which he would like to have paid. If the attaching creditors have to forfeit their liens, these tax claims will be paid first and will not survive to plague him after his discharge. If the debtor were not in the military service he could have petitioned for bankruptcy promptly after the liens were secured. Then the trustee would have had the liens discharged and used the funds to pay the tax claims. A broad interpretation of § 205 brings about the same result and prevents the bankrupt from suffering prejudice on account of his military service.

In reaching this conclusion I have not been unmindful of the decision in Ebert v.

Poston, 266 U.S. 548, 553–555, 45 S.Ct. 188, 69 L.Ed. 435, which interpreted §§ 100 and 205 of the Soldiers' and Sailors' Civil Relief Act of March 8, 1918, 40 Stat. 440, 443, 50 U.S.C.A.Appendix, §§ 101, 116, the prototypes of §§ 100 and 205 of the 1940 Relief Act. Mr. Justice Brandeis' opinion was directed to the question whether § 205 of the 1918 Act extended the mortgagor's period of redemption after a foreclosure effected without judicial action. It is true that in answering that question negatively he indicated that § 205 should be read strictly and that the courts should not try to cover a casus omissus in the legislation. But I do not regard those indications as controlling here. Mr. Justice Brandeis did not have to consider the interlacing of two acts of Congress, and the paradoxes which literal construction of each of them would involve. He did not have the problem of relating Section 205 to judicial as distinguished from contractual action. And he was concerned with the application of a relief act to that field of law, mortgages, where there is a necessary insistence upon rigidity of construction and upon absolute faithfulness to the letter in order to promote security of transactions. Here we are dealing with the field of bankrupcy, an area where there is a greater need of flexibility in order so far as possible to promote equality of treatment and to prevent overreaching by creditors who have become diligent only after they have learned of their debtor's insolvency.

Petitions to set aside referee's order are severally denied.